# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE ) 
                              )       I.D. No.   2009005206

v.                      )
                              )

ALEXANDER SINGLETARY,      )
                              )

           Defendant.      )

## ORDER

Submitted: September 1, 2021
Decided: September 27, 2021

*Upon Defendant's Motion to Transfer Charges to Family Court*
**DENIED**

### I.    INTRODUCTION

1.      Alexander Singletary ("Defendant") is charged with Attempted Murder and Possession of a Firearm During the Commission of a Felony ("PFDCF"), along with ten related charges, in connection with a shooting that occurred on September 10, 2020, when Defendant was seventeen years of age.

2.      A reverse amenability hearing was held on August 24 and August 26, 2021. Upon consideration of the parties' written submissions, evidence presented at the hearing, and oral argument, Defendant's motion to transfer charges to Family Court is **DENIED**.

### II.    FACTUAL AND PROCEDURAL HISTORY

3.      It is alleged that on September 10, 2020, Defendant shot a firearm towards his intended victim and in close proximity to other witnesses. The shooting occurred in a small apartment, with at least four witnesses present. Defendant was

arrested on September 15, 2020, and was bound over to Superior Court after a preliminary hearing in Family Court, which was held on September 28, 2020.

4.  On March 1, 2021, Defendant was indicted on these charges to include Attempted Murder First Degree; PFDCF; Possession, Purchase, Own or Control a Firearm by a Prohibited Juvenile; Assault Second Degree; Carrying A Concealed Deadly Weapon; four counts of Reckless Endangering First Degree; two counts of Aggravating Menacing; and Criminal Mischief.  On March 30, 2021, Defendant filed a Petition for Reverse Amenability Hearing.

### III. STANDARD OF REVIEW

5.  The reverse amenability process is meant to give juveniles who are charged as adults the opportunity to provide evidence of their amenability to the rehabilitative process of the Family Court.[1]  "Upon application of the defendant in any case where the Superior Court has original jurisdiction over a child," this Court must hold a reverse amenability hearing to determine if "[t]he interests of justice would be best served by . . . transfer [to Family Court]."[2]  The Court will weigh the four factors[3] set forth in 10 *Del. C.* § 1011(b) in making such determination.[4]

---

[1] *State v. Charles*, 2021 WL 3556780, at *2 (Del. Super. Aug. 6, 2021); see *Hughes v. State*, 653 A.2d 241, 251 (Del. 1994) ("[T]here must be some mechanism in which a child may seek a disinterested examination into the basis of the felony charge to be prosecuted as an adult.").
[2] 10 *Del. C.* § 1011(b).
[3] The Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]" and (4) any "other factors which, in the judgment of the Court are deemed relevant." *Id.*
[4] *Charles*, WL 3556780, at *2.

## IV. DISCUSSION

### A. Fair Likelihood of Conviction

6. If the juvenile files a motion to transfer the adult charges, this Court must "preliminary determine whether the State has made out a *prima facie* case against the juvenile."[5] To do so, the Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[6] The Court must find that there is a real probability "that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[7]

7. Since Defendant is also charged with PFDCF, the relevant statute[8] requires the Court to find proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a felony. Specifically,

> [e]very person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law.[9]

8. The above provision entitles a juvenile defendant to an evidentiary hearing and allows the firearm charges to be transferred back to Family Court if the Court does not find proof positive or presumption great that the juvenile used,

---

[5] *State v. Harper*, 2014 WL 1303012, at *5 (Del. Super. Mar. 31, 2014) (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[6] *Id.* (citing *Marine*, 624 A.2d at 1185).
[7] *Id.* (citing *State v. Mayhall*, 659 A.2d 790 (Del. Super. 1995).
[8] 11 *Del. C.* § 1447A(f).
[9] *Id.*

displayed, or discharged a firearm during the commission of a felony.[10] The proof positive or presumption great standard asks whether "after [a] full hearing 'there is good ground to doubt the truth of the accusation.'"[11] If so, then "the Court in its discretion [may] conclude[] from the evidence that the State does not have a fair likelihood of convicting the accused of the . . . offense."[12]

9. Defendant's charges stem from events that occurred on September 10, 2020. Detective Bowman, a member of the Dover Police and the chief investigating officer in this matter, testified at the hearing for the State.

10. Initially, police responded to a call from a witness' mother. At the time of the call, officers did not know what the nature of the crime was. Responding officers located persons outside an apartment complex who led the officers to an apartment located at 135 Willis Road in Dover, Delaware.

11. Detective Bowman testified that through his investigation and interviews with witnesses he learned that a gun had been discharged inside the apartment with at least five other people in the apartment at the time. Four of the other people in the apartment provided Detective Bowman or other officers with relevant information. The first witness ("Witness One") named Defendant as the shooter. Witness One told the Detective that Defendant brought a handgun into the apartment. Thereafter, Defendant removed the handgun from his pocket and tried to hide it under the couch. At some point later, Defendant's girlfriend got into an argument with another witness ("Witness Two"). In response, Defendant flipped the couch and retrieved the handgun. Defendant then pointed the handgun at another witness ("Witness Three"). Witness One showed the Detective, with exaggerated

---

[10] *State v. Sharpe*, 2020 WL 119647, at *3 (Del. Super. Jan. 10, 2020) (citing 11 *Del. C.* § 1447A(f)).
[11] *See In re Steigler*, 250 A.2d 379, 382 (Del. 1969) (internal quotations omitted).
[12] *Id.* at 383.

motions, how he got in between Defendant and Witness Three, which allegedly prevented the bullet from hitting Witness Three.

12. Witness Two told the Detective that she had had longstanding animosity with Defendant's girlfriend. Witness Two explained to the Detective that at some point Defendant pushed Witness Three. In response, Witness Three got upset with the situation and pepper sprayed Defendant. Defendant then went to the kitchen and allegedly used milk to alleviate the burning sensation in his eyes. Defendant returned from the kitchen, grabbed a handgun, and shot it in Witness Two's direction. Witness Two alleged that the round grazed her upper left arm.

13. Witness Three did not speak directly to Detective Bowman but spoke to other police officers who relayed the information to the Detective. Witness Three told the officers that Defendant pushed her and eventually grabbed a black handgun from under the couch and pointed it at Witness Two, and then pointed it at Witness Three. Witness Three further told the officers that while the handgun was pointed at her face, Defendant discharged the firearm. She noted that if it was not for the kickback of the handgun's being discharged, Defendant would have shot her.

14. A fourth witness ("Witness Four") told Detective Bowman that Defendant pointed a handgun at Witness Three's head as well as that of Witness Two.

15. During Bowman's investigation of the crime scene, he found spilled milk on the floor of the kitchen to corroborate the use of the pepper spray. Additionally, Detective Bowman found shell casings and what appeared to be bullet holes in the drywall, to corroborate that a gun had been discharged in the apartment. Detective Bowman, through his investigation and witnesses' interviews, identified the Defendant as the shooter and arrested him days after the incident.

16. Here, multiple witnesses identified the use of a firearm and Defendant as the shooter. Under 11 Del. C. § 1447A(f), the Court first finds proof positive or

presumption great that Defendant displayed a firearm during the incident, and this court will therefore maintain jurisdiction of the PFDCF charge.

17. As to the charge of Attempted Murder First Degree and the other charges, at this juncture, a reasonable jury could convict on the totality of the evidence assuming the State's evidence stood unrebutted. For these reasons and those stated on the record, the State has met its burden of demonstrating a *prima facie* case against Defendant with a fair likelihood of conviction at trial. The Court now considers the factors for transfer.

### B. Weighing § 1011(b)'s Four Factors

18. Under 10 *Del. C.* § 1010, when a youth is charged with the crime of Attempted Murder in the First Degree, among others, a child shall be proceeded against as an adult.[13] Accordingly, "[Defendant] has lost the benefit of Family Court adjudication by statutory pronouncement, [and] there is a presumption that need exists for adult discipline and legal restraint. Hence, the burden is upon the juvenile to demonstrate to the contrary."[14] The presumption stands when weighing the factors set forth in Section 1011.[15]

---

[13] 10 *Del. C.* § 1010(a)(1) ("A child shall be proceeded against as an adult where [t]he acts alleged to have been committed constitute first- or second-degree murder, rape in the first degree or rape in the second degree, assault in the first degree, robbery in the first degree (where such offense involves the display of what appears to be a deadly weapon or involves the representation by word or conduct that the person was in possession or control of a deadly weapon or involves the infliction of serious physical injury upon any person who was not a participant in the crime and where the child has previously been adjudicated delinquent of 1 or more offenses which would constitute a felony were the child charged under the laws of this State) or kidnapping in the first degree, or any attempt to commit said crimes.").

[14] *Charles*, 2021 WL 3556780, at *3 (quoting *State v. Anderson*, 385 A.2d 738, 740 (Del. Super. 1978)).

[15] *Id.*

## I.  Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

19.    The first factor is a two-pronged analysis. The first prong inquires into the nature of the present offense.  The offenses in this case are manifestly serious. Defendant is facing a total of twelve counts, with the most serious being attempted murder in the first degree.  Defendant is alleged to have taken a handgun from under the couch in the apartment, pointed the handgun at other individuals, and shot the handgun.  The Detective testified that Witness Two had discoloration or grazing on her skin, which indicated that the bullet made impact with Witness Two.  Witness Three reported to the Detective that if not for the kickback of the handgun the bullet would have hit her.  For these reasons, the first prong weighs heavily against transfer.

20.    The second prong deals with the Defendant's prior record. Defendant has no adjudicated proceedings; therefore, the second prong weighs in favor of transferring the charges.[16]

## II.  Section 1011(b) Factor Two: Nature of Defendant's Past Treatment and Rehabilitative Efforts and the Nature of Defendant's Response thereto

21.    Defendant has had a significant amount of treatment.  During the hearing both experts commented on the number of evaluations of Defendant that had been undertaken.  Defendant's expert, Robin Belcher-Timme, Psy.D., ABPP, CCHP-MH, testified and provided a report to the Court.  Dr. Timme found that Defendant had experienced an impressive amount of treatment opportunities, including multiple competency evaluations.[17]  Defendant, through his treatment process, had

---

[16] Defendant has been arrested several times since 2016.  The YRS report notes ten different arrests with a varying degree of charges ranging from Robbery First Degree to Offensive Touching. *See* YRS Reverse Amenability Report (State's Hearing Exhibit 1), at 2 (Aug. 9, 2021).

[17] Defendant has had five competency evaluations that have generated treatment plans.  Defendant has participated in one Consultation and Assessment Evaluation.  Finally, Defendant has experienced both inpatient and outpatient care, which has included Therapeutic Support Services,

the opportunity to attend the Natchez Trace Youth Academy ("Natchez"). Dr. Timme testified that Natchez is a facility in Tennessee with a strong psychiatric component. The Division of Prevention and Behavioral Health Services ("DPBHS") paid to send Defendant out of state for treatment at Natchez. Dr. Timme described the treatment as unusual for someone who has not been an adjudicated delinquent.

22.    Both Defendant's expert and the State's expert, Stephen Mechanick, M.D., concluded that Defendant is not amenable to Family Court services.[18] They both agreed that efforts and resources have already been expended, most notably the State's expenditure of funds to send Defendant out of state to Natchez. The Division of Youth Rehabilitation Services ("YRS") representative, Andrew Szymanski, testified that Defendant had not shown significant signs of improvement and has had many incidents during his treatment that required administrative interventions. During Defendant's time in detention, he has been involved in six administrative interventions. These interventions have included Defendant's attacking both peers and staff unprovoked. Mr. Szymanski testified that YRS would not be able to provide any residential placements for youth past the age of nineteen,[19] leaving Defendant with less than half a year of residential placement treatment. Ultimately, YRS found that Defendant is not amenable to the services of Family Court and that his charges should "remain in Superior Court for resolution."[20]

---

Residential Programming, Substance Abuse Outpatient Services, and Functional Family Therapy. *See* YRS Reverse Amenability Report, at 4.

[18] *See* Psychiatric Evaluation of Stephen Mechanick, M.D. (State's Hearing Exhibit 2), at 12 (July 25, 2021). Dr. Timme did not offer a conclusion in his report but in his testimony at the hearing he found —given his perception of the inability or unwillingness of YRS to offer services past age 19—Defendant not to be amenable.

[19] *See* YRS Reverse Amenability Report, at 6.

[20] *Id.*

23.     This Court notes Dr. Timme's delineation between treatment and rehabilitation for the Defendant.[21] Notwithstanding, Defendant has had a substantial amount of treatment since 2016 and has responded poorly. According to Mr. Szymanski, there were several times where Defendant was reintegrated back into youth programming and immediately engaged in a fight or altercation. Most of these fights and altercations occurred more recently, after Defendant turned 18.[22] Mr. Szymanski also testified that the most recent administrative intervention occurred in July 2021, where Defendant tried to jump another resident with assistance from other peers.[23]

24.     The Court finds that Defendant has received a substantial amount of treatment and has responded negatively to the treatment.[24] The second factor weighs against transferring the charges.

### III.     Section 1011(b) Factor Three: Interests of Society and Defendant

25.     Despite years of treatment and services, Defendant's behavior has escalated into extremely serious offenses and continued violent behavior. While Defendant is only eighteen years old, his intensifying violent conduct must be addressed. In recognition of these facts, the Court finds that it is in society's and the Defendant's best interest that Defendant transition into adulthood through community supervision of this Court. This factor weighs against a transfer.

---

[21] Dr. Timme explained that because YRS found Defendant incompetent during his years in detention, he could not get the testing done that would have identified his criminogenic markers to aid in rehabilitation. However, the Court agrees with Dr. Mechanick's testimony that treatment and rehabilitation can sometimes overlap, especially given that Defendant went to Natchez, which appears to include both.

[22] *See* YRS Reverse Amenability Report, at 4.

[23] *Id.*

[24] The Court notes that, more recently, Defendant has been more cooperative with staff as a resident of Stevenson House. *See* YRS Reverse Amenability Report, at 5. However, this does not alter the Court's overall assessment of Defendant's negative response to treatment.

26. Defense counsel contended in closing argument that the interests of society weigh in favor of transferring the case to Family Court because YRS allegedly has the authority to supervise Defendant until he is age 21, albeit not in a residential setting. At the State's request, the Court allowed post-hearing supplemental briefing on this issue. However, because of the other factors weighing heavily against transfer to Family Court as noted above, including the nature of the offenses, prior efforts at treatment and Defendant's reaction thereto, and continuing violent conduct, the Court need not decide this issue and therefore declines to do so. In short, the Court finds that, even if Defendant had access to YRS services until age 21, it would not be appropriate to transfer his charges to Family Court for the reasons previously discussed.[25]

## CONCLUSION

27. The Court finds that the State has established proof positive or presumption great that Defendant used or displayed a firearm during the commission of a felony, for which he stands charged under 11 Del. C. § 1447A(f). The State has also established a fair likelihood of conviction at trial on all of the charges. Weighing the enumerated factors under 10 Del. C. § 1011(b), transfer is not appropriate. Therefore, Defendant's motion to transfer charges to Family Court is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge

*Via Email*
oc:    Prothonotary
       Sean A. Motoyoshi, Esq.
       Zachary A. George, Esq.

---

[25] The fourth factor of § 1011(b)—other factors the Court deems relevant—is not applicable because the Court finds no other relevant factors.